UNITED STATES *v.* GRUEN WATCH CO. (No. 3880) [1]

---

[1] T. D. 48029.

United States Court of Customs and Patent Appeals, November 4, 1935

*Joseph R. Jackson*, Assistant Attorney General (*William Whynman*, special attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for appellee.

[Oral argument October 10, 1935, by Mr. Whynman and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (Second Division) sustaining a protest of appellee against the assessment of duty by the Collector of Customs at the port of Cincinnati, Ohio, upon the value of the repairs upon certain watch movements, originally imported under the Tariff Act of 1922, thereafter

exported to Switzerland and, after being repaired, returned to the United States in 1930 and 1931, after the enactment of the Tariff Act of 1930. Five different entries are involved.

The evidence before the trial court establishes that said watch movements were imported by appellee under the Tariff Act of 1922, and that duty was assessed and paid thereon under the provisions of paragraph 367 of said tariff act; that when so imported they were adjusted to different positions and so marked, as required by said paragraph; that the movements here involved were thereafter exported to Switzerland for repairs, such repairs consisting principally of cleaning and re-oiling the movements; that in making such repairs the parts were disassembled, destroying the adjustments upon them as marked, and when again assembled in Switzerland they were not in fact adjusted, although the original adjustment markings remained; that no additional markings were placed thereon, and after the movements were returned to the United States they were adjusted by appellee.

In determining the duty to be assessed against the value of the repairs, the collector treated the watch movements as being adjusted in accordance with their markings.

The pertinent provisions of the Tariff Act of 1930 here involved read as follows:

PAR. 1615. * * * articles exported from the United States for repairs may be returned upon payment of a duty upon the value of the repairs at the rate at which the article itself would be subject if imported, under conditions and regulations to be prescribed by the Secretary of the Treasury * * *.

PAR. 367. (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

(1) * * * if more than six-tenths of one inch but not more than eight-tenths of one inch wide, $2.25 each * * *;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) any of the foregoing having more than seven jewels shall be subject to an additional duty of 15 cents for each jewel in excess of seven;

(4) any of the foregoing shall be subject to an additional duty of $1 for each adjustment of whatever kind (treating adjustment to temperature as two adjustments) in accordance with the marking as hereinafter provided;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) All the foregoing shall have cut, engraved, or die sunk, conspicuously and indelibly on one or more of the top plates or bridges: The name of the country of manufacture; the name of the manufacturer or purchaser; in words and in Arabic numerals the number of jewels, if any, serving a mechanical purpose as frictional bearings; and, in words and in Arabic numerals, the number and classes of adjustments, or, if unadjusted, the word "unadjusted".

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(j) An article required by this paragraph to be marked shall be denied entry unless marked in exact conformity with the requirements of this paragraph.

The customs regulation here applicable, article 379 of the Customs Regulations of 1923, reads as follows:

ART. 379. *Articles exported for repairs.*

\*          \*          \*          \*          \*          \*          \* ·

Upon return of articles exported for repairs exceeding $100 in value there shall be filed with the entry a certified consular invoice, showing separately the value of the articles in their repaired condition and the cost or value of the repairs, together with the certificate of registration and a declaration made by the consignee, owner, or agent having knowledge of the fact that the articles entered are the identical articles covered by the certificate of registration, and that the value or cost of repairs is correctly stated in the entry.    When the value of the returned articles, including the repairs, is less than $100, a bill or statement showing separately the value of the articles in their repaired condition and the cost or value of the repairs may be accepted in lieu of a certified consular invoice.

\*          \*          \*          \*          \*          \*          \*

At the outset the Government raises the question of the jurisdiction of the Customs Court to entertain the protest of appellee, alleging that, in making entry of the involved merchandise, it failed to comply with said article 379 in that it did not show upon the consular invoice separately the value of the articles in their repaired condition and the cost or value of the repairs.

Assuming, without deciding, that failure to comply with said regulation presents a jurisdictional question, we are of the opinion that the consular invoices of the involved merchandise do fairly comply with said article 379.    It is admitted that the invoices show the cost or value of the repairs; they also show the "original value" of the movements, and we think it may fairly be inferred that the sum of these two items, value of repairs and original value, is the value intended to be placed upon the movements in their repaired condition. This is borne out by the fact that the entered value declared by appellee in two of the entries embracing three invoices, is the sum of these two items.    We therefore hold that there was no violation of said article 379 as claimed by the Government.    Counsel for appellee contend that the words "original value," as used in the invoices, refer to the value of the movements as exported, before being repaired, and we cannot say that this view is erroneous, especially as this seemed to be the view of the appraiser when he approved the entered value of the movements.

We next come to the principal question, viz, did the collector err in fixing the amount of duty that should be assessed against the value of the repairs pursuant to the provisions of said paragraph 1615?

Under the provisions of said paragraph 367 of the Tariff Act of 1930, duties upon watch movements are specific and not ad valorem. Therefore the amount of duty which should be assessed against the value of the repairs is that amount which bears the same proportion to the total duty, if imported, as the value of the repairs bears to the value of the movements.

It is conceded that in order to meet such cases the customs officials adopted a formula which is expressed as follows:

X : duty on movements :: value of repairs : value of the merchandise so returned.

It is also conceded by the parties hereto that this is the correct formula to be applied in such cases, "X" being the amount of duty assessable against the value of the repairs.

The principal controversy arises over the determination of the collector as to the amount of duty assessable against the watch movements involved if they had been imported, and subject to duty, in their repaired condition.

It is conceded that he correctly determined the specific amounts provided for in subparagraphs 1 and 3 of said paragraph 367 (a), but he also included a duty of one dollar for each adjustment, according to the markings upon the movements. This, appellee contends, was error, and the trial court so found, basing such finding upon the fact that when the watch movements were returned to the United States they were in fact unadjusted.

The action of the collector herein is illustrated by his liquidation of entry 449, invoice 3366, item 313, 280 movements, 15 jewels, marked 3 adjustments, as follows:

| | |
|---|---|
| Duty per 367 (a) (1) | $2. 25 |
| Duty per 367 (a) (3) | 1. 20 |
| Duty per 367 (a) (4) | 3. 00 |
| Total duty on article if imported | 6. 45 |

As to the first and second items, amounting to $3.45, there is no dispute, but appellee claims that the collector erred in including the third item of $3 for 3 adjustments under paragraph 367 (a) (4) when, in fact, the movements as returned were unadjusted.

We think both appellee and the trial court inadvertently overlooked what seems to us a plain provision of paragraph 1615, under which it was the duty of the collector, in arriving at the amount of duty to be applied to the value of the repairs, to determine the amount of duty that would have been assessed against such watch movements if originally imported in their repaired condition at the time of the entries here involved.

We again quote the provision of said paragraph 1615 here pertinent:

PAR. 1615. * * * articles exported from the United States for repairs may be returned upon payment of a duty upon the value of the repairs at the rate at which the article itself would be subject *if imported*, under conditions and regulations to be prescribed by the Secretary of the Treasury: * * * (Italics ours.)

It will be noted that the provision does not treat the imported articles returned as "imported" in a tariff sense. The language is that "articles * * * may be returned", but in determining the

rate to be applied to the repairs the collector must determine the duty that would be assessable upon the article so returned "if imported", that is, imported in a tariff sense, subject to duty. It is clear to us that it was the duty of the collector to determine the specific duty that would be assessed against these watch movements "if imported" instead of being "returned", and the amount of this specific duty becomes one of the factors in the formula above alluded to. In this construction of the paragraph it is wholly immaterial that the movements had been once imported and had been assessed with duty upon the adjustments as marked on the movements. It was the duty of the collector to determine the specific duty that *would have been assessed* against these movements, if imported, as if they had never been previously imported. In determining the amount of this duty he was compelled to resort to said paragraph 367 (a), which he did, and he included an additional duty of $1 for each adjustment because paragraph 367 (a) (4) so required. We repeat this subparagraph:

PAR. 367. (a) (4) any of the foregoing shall be subject to an additional duty of $1 for each adjustment of whatever kind (treating adjustment to temperature as two adjustments) *in accordance with the marking as hereinafter provided*; (Italics ours.)

Paragraph 367 (b) provides, among other things, how such markings shall be placed upon the movements.

Before the trial court appellee's counsel made the following statement:

We will admit for the purposes of the record that when these watches were reimported they were marked in accordance with the original markings, adjusted to so many positions or adjusted to temperature, but we contend that duty should only be assessed in accordance with the actual adjustments, and that where the watches were originally adjusted to 1 or 2 positions, and then the adjustments were destroyed and the watches subsequently reimported they are not subject to the additional duty of one dollar for the adjustment, whether or not the watches are still marked.

We see no escape from the position that if the involved watch movements had been imported, as distinguished from returned, and had been subject to the duties imposed by said paragraph 367 (a), the collector would have been compelled to add a duty of $1 for each adjustment according to the marking, and it would have been wholly immaterial whether the movements had been in fact adjusted. The statute required him to assess duty against the watch movements, if imported, "in accordance with the marking."

It appears to us that, so far as this matter is concerned, the collector complied with the statute. In arriving at the duty to be assessed against the value of the repairs, he determined what duty would be assessable against each watch movement "if imported" in its repaired condition, and by the plain words of paragraph 367 (a)

(4) he was required to find that, "if imported," each movement would be subject to a duty of $1 for each adjustment "in accordance with the marking," irrespective of the fact that the movements were not adjusted.

We are therefore compelled to hold that the trial court erred in holding that the collector improperly included adjustment duties upon the movements in determining the amount of duty to be assessed against the value of the repairs.

It is conceded that the appraiser approved the entered value in each of the entries here involved. In entry 449, invoices 3366 and 3367, and in warehouse entry 77, invoice 4118, appellee included the value of the repairs in the entered value. In warehouse entry 92, invoice 196, the repairs were not included in the entered value. In warehouse entry 123, invoice 1047, and warehouse entry 86, invoice 4497, the repairs were included and then deducted, so that in fact the entered value did not include any amount for repairs. With respect to the three invoices above referred to which included the repairs in the entered value, the collector, although said entered value had been passed by the appraiser, deducted from such entered value the amount entered for repairs, and used as a factor in determining the duty to be assessed against the value of the repairs the "original value" given in the entries. This the trial court held was error, and we are in agreement with that holding.

It is our opinion that it was the duty of the appraiser to ascertain the value of the watch movements at the time they were returned to this country, and also the value of the repairs made upon said movements.

The collector never acts as an appraising officer, and while said paragraph 1615 uses the words "if imported," we think it is a fair implication that it was the duty of the appraiser to ascertain the value of said watch movements to assist the collector in determining the amount of duty to be assessed against the value of the repairs. The appraiser did ascertain the value of the watch movements and approved the entered value.

The collector failed to appeal to reappraisement, and it is our opinion that the Government is now bound by the appraised value found by the appraiser, and that the collector should have used such appraised value as one of the factors in determining the amount of duty to be assessed against the value of the repairs.

Of course, it does not necessarily follow that the value of an article returned repaired is the original value of the article plus the cost or value of the repairs. The value of the article in its repaired condition should be determined by the appraiser as he would determine the value of any article of imported merchandise, and we must assume that he did so in the case at bar.

For the reasons stated herein, the protest of appellee should be overruled insofar as it relates to warehouse entry 92—invoice 196, warehouse entry 123—invoice 1047, and warehouse entry 86—invoice 4497. Insofar as the protest relates to entry 449—invoices 3366 and 3367, and warehouse entry 77—invoice 4118, it should be sustained in part, and judgment should be entered requiring the collector to reliquidate said last-named entries upon the basis of the values returned by the appraiser and the specific duties that would have been assessed upon the watches involved, if imported, as hereinbefore determined.

The judgment of the United States Customs Court is *reversed* and the cause is *remanded* for further proceedings not inconsistent with the views here expressed.